### ABRAHAM *v.* WALTER NELLER COMPANY
#### OPINION OF THE COURT

1. BROKERS—SALESMEN—EMPLOYMENT.
    The employment contract between a real estate broker and his salesman controls the rights and obligations between these parties, not a listing agreement which the broker has with a property owner.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers §§ 31, 81, 165.
[2] 12 Am Jur 2d, Brokers §§ 31, 159.
[3] 12 Am Jur 2d, Brokers §§ 165, 182 *et seq.*
[4, 6] 12 Am Jur 2d, Brokers §§ 165, 236.
[5] 12 Am Jur 2d, Brokers §§ 165, 195.
[7] 5 Am Jur 2d, Appeal and Error § 545.
[8] 29 Am Jur 2d, Evidence § 496.
[9] 12 Am Jur 2d, Brokers § 12.

2. BROKERS—REAL ESTATE—LISTING AGREEMENTS.

A listing agreement between a real estate broker and a property owner controls the rights and obligations between these parties.

3. BROKERS—SALESMAN—COMMISSION.

A real estate salesman's commission is earned when he is the procuring cause of a sale even though the sale may have been consummated by another.

4. BROKERS — SALESMEN — EMPLOYMENT — REALTORS' RULES — INCORPORATION.

A real estate salesman's employment contract which incorporates by reference a local realtors' rule specifying that an owner's reservation of prospects in a listing agreement is permissible when those prospects are named controls the right of a real estate salesman to his commission and a listing agreement which reserves a prospect but fails to identify that prospect by name is invalid as to that salesman.

5. BROKERS — SALESMEN — COMMISSION — LISTING AGREEMENT — RESERVATION OF PROSPECT.

A real estate salesman, who had produced buyers ready, willing and able to buy owners' home, was entitled to his commission even though the owners' listing agreement with the real estate broker contained a reservation of prospect provision where the prospect was not identified by name as required by local realtors' rules and the owners consummated the sale after being introduced to the buyers by the salesman.

6. BROKERS—SALESMEN—EMPLOYMENT CONTRACT—COMMISSION.

Employment contract between real estate brokerage firm and a salesman providing for payment to the salesman of commissions earned by him immediately after consummation of a sale as soon as such commission has been collected by the broker may not be construed to deny the salesman his commission where the broker by choice fails to collect his commission or through his own fault negotiates a listing agreement that makes the commission uncollectible.

7. PARTIES—NONJOINDER—APPEAL AND ERROR—REVIEWABILITY.

Nonjoinder of parties issue must be raised during trial, otherwise it cannot be raised on appeal.

DISSENTING OPINION
QUINN, J.

8. EVIDENCE—HEARSAY—ADMISSIBILITY—PURPOSE.
   *Admission of a real estate salesman's testimony regarding two questions asked of him by property owners after the salesman had introduced prospective buyers to them was proper where the testimony was admitted solely to prove that these questions were asked and not to prove their substantive content.*

9. BROKERS—SALESMEN—EMPLOYMENT CONTRACT—COMMISSION.
   *Employment contract requiring a real estate broker to pay his salesman a commission "as soon as such commission has been collected by the broker" and otherwise giving the broker control in collecting commissions, means that if the broker collects, the salesman is paid but if a broker releases a listing without seeking a commission, after determining that the listing should be released, the salesman cannot recover a commission.*

Appeal from Ingham, Archie D. McDonald, J., presiding. Submitted Division 2 June 5, 1969, at Lansing. (Docket No. 6,473.) Decided October 2, 1969. Application for leave to appeal filed October 17, 1969.

Complaint by George Abraham against Walter Neller Company, a Michigan corporation, for a real estate sales commission. Judgment for plaintiff. Defendant appeals. Affirmed.

*Farhat, Burns & Luoma (E. Michael Stafford,* of counsel), for plaintiff.

*Alvin A. Neller,* for defendant.

Before: LESINSKI, C. J., and QUINN and DANHOF, JJ.

LESINSKI, C. J. This is an action for the recovery of a real estate commission instituted by plaintiff

George Abraham, a real estate salesman, against his employing broker, defendant Walter Neller Company. While plaintiff was in the employ of defendant, another salesman of defendant, W. Richard Neller, listed the home of Mr. and Mrs. Wilson. Pursuant to the listing agreement, defendant broker was granted an exclusive right to sell the Wilson home, subject to a noted exception that the "owner reserves one prospect". Defendant was unaware of the identity of the reserved prospect. Under the agreement defendant was entitled to a commission from the Wilsons if a ready, willing and able purchaser was produced.

The employment contract between plaintiff and defendant provided that defendant agreed to make available to its salesmen all current listings of the office. The contract further provided that defendant would pay its salesmen:

"[A] commission in accordance with the rate schedule below, *immediately after consummation of any sale as soon as such commission has been collected by the broker.*" (Emphasis supplied.)

In addition, the agreement stated that:

"Suits for commissions shall, agreeable to the law, be maintained only in the name of the broker, and the salesman shall be construed to be a sub-agent only with respect to the clients and customers for whom service shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, joint venturer or partner of the broker."

The agreement further provided:

"That the parties hereto will conform to and abide by all laws, rules and regulations and codes of ethics that are binding upon or applicable to real estate brokers and salesmen."

One of the rules of the Lansing Board of Realtors provided:

"Owner may reserve prospects under the following conditions:
"a. That the prospects be identified by name."

Shortly after defendant obtained the Wilson listing, plaintiff met Mr. and Mrs. Elliott, prospective purchasers of the Wilson home. Plaintiff attempted to show the Elliotts the Wilson residence but upon arrival at the premises learned that the Wilsons were indisposed and unable to show the home. Evidence indicates that the Wilsons did not know the Elliotts since the Wilsons made an inquiry and were informed by plaintiff of the name, city, occupation and employer of the Elliotts. When plaintiff later contacted the Elliotts, he learned that the Wilsons had dealt directly with the Elliotts and consummated the sale without payment of commission. Defendant investigated the sale and concluded that no commission was owing as the Wilsons sold the property to the prospects reserved in the listing agreement.

Thereafter, plaintiff instituted suit against defendant for his portion of the commission on the sale. He argued that he had produced a ready, willing and able buyer as required by the listing agreement. Therefore, under his employment contract and the rules of the Lansing Board of Realtors requiring identification of reserved prospects by name, plaintiff contended that he was entitled to a commission since the reservation was improperly made.

The trial court, sitting without a jury, granted judgment to plaintiff for $1,525.39, the amount of plaintiff's share of the commission. Defendant appeals.

The first contention on appeal concerns the trial court's determination that, under provisions of the

employment contract, the listing agreement and the rules of the Lansing Board of Realtors, plaintiff was entitled to recover his share of the commission regardless of defendant's failure to seek enforcement of the listing agreement. In particular, defendant asserts that a salesman is not entitled to a commission from his employing broker as the listing agreement contains a limitation preventing the broker from enforcing the listing agreement. We disagree.

As the trial court stated, so far as the obligations between the defendant and the Wilsons are concerned, the listing agreement with its reservation of one prospect is controlling. However, the employment contract between plaintiff and defendant, and not the listing agreement, is controlling as to the rights and obligations between plantiff and defendant.

The trial court correctly indicated that a salesman's commission is earned when he is the procuring cause of a sale even though the sale may have been consummated by another. Under the rule of the Lansing Board of Realtors, *supra,* which was incorporated by reference into the employment contract, reservation of a prospect is permissible only where the prospect is named. The reservation in this particular case, failing to identify the prospect, was invalid as to plaintiff. Defendant in the instant case accepted a listing agreement from the Wilsons, who were close friends of Walter Neller, chairman of the board of defendant corporation, containing an undesignated reservation of one prospect, contrary to the employment agreement. The reservation, due to its ambiguity, provided the Wilsons an opportunity to "adopt" any one prospect presented to them as their own, irrespective of the means by which such prospect was procured. Such a provision in the listing agreement was ineffective to deny

plaintiff recovery where plaintiff found a purchaser who was ready, willing and able to consummate the sale, as required by his employment contract, and had no knowledge of the identity of the reserved prospect.

While defendant claims that the employment contract stated clearly that a salesman was entitled to a commission only if the broker obtained his commission, our examination of the contract discloses no such statement. The contract does provide that the broker agrees:

. "To pay the salesman a commission in accordance with the rate schedule below, *immediately after consummation of any sale as soon as such commission has been collected by the broker.*" (Emphasis supplied.)

While this provision specifies the time when a broker is required to pay an earned commission to a salesman, we do not construe it to allow the broker to deny recovery of a commission that has been earned by a salesman under his employment contract. Where, as here, the broker either by choice fails to collect his commission or, through his own fault accepts a listing agreement contrary to the employment contract, the salesman is not denied the right to recover his commission. Thus, in the instant case, plaintiff properly was granted a judgment for his share of the commission.

Defendant also contends the trial court erred in denying plaintiff's motion to join Mr. and Mrs. Wilson as third-party defendants. However, defendant never moved to join the Wilsons nor objected to the trial court's denial of plaintiff's motion to join the Wilsons. In *Kotesky* v. *Davis* (1959), 355 Mich 536, the Michigan Supreme Court indicated that a challenge to the propriety of including a person as a party came too late when raised for the first time on

appeal. See, also, *Poss* v. *Rossen-Poss Agency, Inc.* (1966), 3 Mich App 726. The issue of joinder was not raised by defendant during trial and cannot be raised on appeal.

Defendant next contends the trial court erred in denying defendant the right to explain under the parol evidence rule, the notation in the listing that the "owner reserves one prospect". This contention, however, has no merit as our review of the transcript indicates that despite plaintiff's objections, defendant was allowed a complete opportunity and did present testimony explaining the notation. The trial court in its opinion was not required to adopt the explanation elicited by this testimony.

Defendant's final assignment of error concerns the admission of plaintiff's testimony regarding his conversation with Earl Wilson. The testimony consisted of the two questions which Wilson allegedly asked plaintiff when plaintiff attempted to show the Wilson home to the Elliotts. The questions were: Who are these people? What does he do?

In *Nash* v. *Sears, Roebuck & Company* (1968), 12 Mich App 553, this Court, in determining the admissibility of evidence alleged to be hearsay, stated (p 562):

"The evidence was not admitted as hearsay—to prove the truth of the matter asserted—but rather to prove the fact of an assertion."

Similarly, in the instant case the trial court sitting without a jury admitted the testimony after objection by defendant solely to prove that a statement was made and not to prove the substantive content of the statement. The trial court committed no error.

Affirmed. Costs to plaintiff.

DANHOF, J., concurred.

Quinn, J. (*dissenting*).  I am unable to agree with the majority opinion.

Plaintiff was a commission salesman under defendant broker and his right to a commission was controlled by his written employment contract with defendant.  The portions of the contract material to present decision read:

"That all exclusive listings are the property of the broker,  *  *  *  .

"To pay the salesman a commission in accordance with the rate schedule below, immediately after consummation of any sale as soon as such commission has been collected by the broker.

"Suits for commission shall, agreeable to the law, be maintained only in the name of the broker, and salesman shall be construed to be a sub-agent only with respect to the clients and customers for whom service shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, joint venturer or partner of the broker."

During the term of the listing contract, plaintiff came upon some people by the name of Elliott who were looking at a house defendant had listed.  Plaintiff introduced himself, learned the house Elliotts were then viewing was not suitable, and inquired what type of home they were interested in.  After hearing the Elliotts' description of the type of home they wanted, plaintiff told them of the Wilson property.  Elliotts asked to see it and plaintiff attempted to show them the Wilson property.  It was not then available for showing and the Elliotts could not wait until it was available.  Elliotts said they would make an appointment with plaintiff to see the Wilson property later that week.  When the Elliotts failed to make this appointment, plaintiff learned they

were dealing directly with the Wilsons. Wilsons concluded a sale to Elliotts directly.

After investigation, defendant released Wilsons from the listing agreement and defendant received no commission on the transaction.

Plaintiff's written contract of employment required defendant to pay him a commission, "immediately after consummation of any sale as soon as such commission has been collected by the broker". The same contract gives defendant control of commissions and this indicates the true meaning of the phrase, "as soon as such commission has been collected by the broker". It is, if the broker collects, the salesman is paid.

Such a provision is valid and binding, *O'Connor* v. *March Automatic Irrigation Co.* (1928), 242 Mich 204. This does not permit the broker to defeat the salesman's claim for commission by arbitrary action without just cause or for the convenience of the broker, *O'Connor, supra.* Here, however, the record indicates the broker investigated, determined the listing should be released and released it without seeking a commission. This bars plaintiff from recovery.

I would reverse and remand for entry of judgment for defendant with costs to it.