DeWITT TOWNSHIP v CLINTON COUNTY

Docket No. 50666. Submitted January 6, 1981, at Lansing.—Decided March 2, 1982.

DeWitt Township petitioned the Michigan Tax Tribunal for review of a 1976 order of the Clinton County Board of Commissioners reducing the millage rate allocation for the township from 1 mill to 0.976 mill. The reduction was undertaken by the commission pursuant to the mandate of 1975 PA 243 by reason of the fact that the property in Clinton County had been underevaluated and the State Tax Commission had assigned an equalization factor of 1.02620. Petitioner alleged that 1975 PA 243 was unconstitutional in that it denied the township of equal protection and due process of law. Named as respondent was Clinton County, which answered, admitting having ordered the reduction and agreeing with the petitioner that the statute was unconstitutional. The Tax Tribunal *sua sponte* dismissed the petition for want of a controversy. Petitioner appealed, and by an unpublished per curiam opinion (Docket No. 77-2008, decided March 23, 1978) the Court of Appeals remanded the matter to the Tax Tribunal for reinstatement with instructions that the Department of Treasury be impleaded as a respondent. On remand, the Tax Tribunal *sua sponte* dismissed the petition on the basis that the Tax Tribunal was without jurisdiction to decide constitutional questions. Petitioner appeals. *Held:*

1. The Michigan Tax Tribunal has jurisdiction to decide constitutional questions. The tribunal, accordingly, erred in its *sua sponte* dismissal of the petition on the basis that the petition raised constitutional questions.

2. The result reached by the Tax Tribunal will not be

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, State and Local Taxation § 1140.
[2] 5 Am Jur 2d, Appeal and Error §§ 727, 785.
[3] 5 Am Jur 2d, Appeal and Error § 873.
[4] 72 Am Jur 2d, State and Local Taxation §§ 831-833.
[5] 71 Am Jur 2d, State and Local Taxation § 141.
[6] 16 Am Jur 2d, Constitutional Law § 198.
  71 Am Jur 2d, State and Local Taxation § 173.

disturbed on appeal where the tribunal reached the right result for the wrong reason.

3. The property tax rate reduction provision does not violate the constitutional provision requiring uniformity and local units of government may not raise equal protection or due process of law claims with respect to a taxing scheme adopted by the Legislature. Petitioner's claims, therefore, are without merit.

Affirmed.

1. TAXATION — TAX TRIBUNAL — JURISDICTION — CONSTITUTIONAL LAW.

The Michigan Tax Tribunal has jurisdiction to decide constitutional questions raised pursuant to the tribunal's review of tax matters.

2. TAXATION — TAX TRIBUNAL — APPEAL.

The result reached by the Michigan Tax Tribunal will not be disturbed on appeal where the tribunal reached the right result for the wrong reason, the Court of Appeals having the power to give any judgment or to make any order which ought to have been made below (GCR 1963, 820.1[7]).

3. APPEAL — CONSTITUTIONAL LAW.

The Court of Appeals will resolve constitutional questions which have not been decided below where the resolution of such questions is in the interests of justice.

4. TAXATION — CONSTITUTIONAL LAW — UNIFORMITY OF TAXATION.

The statutory provision requiring a taxing unit other than a school district, intermediate school district or community college district to reduce its millage rate upon an increase in the county equalized value by the State Tax Commission so that the total property taxes levied will not exceed the amount which would have been levied if there had not been an increase in valuation by the state does not violate, with respect to a township or county, the constitutional requirement of uniformity of taxation (Const 1963, art 9, § 3, 1975 PA 243).

5. TAXATION — CONSTITUTIONAL LAW — RATE OF TAXATION.

The constitutional 15-mill limitation on general ad valorem taxes levied by local government units does not require that the Legislature allow such local units to tax at the maximum rate permitted by the constitution (Const 1963, art 9, § 6).

6. TAXATION — EQUAL PROTECTION — DUE PROCESS.

Local government units, except to the extent that the constitu-

tion expressly grants or limits the powers of such units, are creatures of legislation; accordingly, such local government units may not assert that a legislative scheme of taxation denies them equal protection or due process of law.

*Church, Wyble, Kritselis, Anderson & Robinson, P.C.* (by *Thomas H. Hay*), for DeWitt Township.

*James A. Park, P.C.*, for Clinton County.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Richard R. Roesch*, Assistant Attorney General, for Michigan Department of Treasury.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and MacKENZIE, JJ.

MacKENZIE, J. This case presents questions concerning the constitutionality of a property tax rate reduction provision. By 1975 PA 243, the Legislature amended MCL 211.34(1); MSA 7.52(1) to provide, in relevant part:

"[E]ach year * * * the county board shall advise the local taxing units when the state tax commission increases the equalized value of the county as established by the board of county commissioners and each taxing unit other than a school district, intermediate school district, or community college district, shall immediately reduce its millage rate so that subsequent to the increase ordered by the state tax commission pursuant to Act No. 44 of the Public Acts of 1911, as amended, being sections 209.1 to 209.8 of the Michigan Compiled Laws, total property taxes levied shall not exceed that which would have been levied if there had not been an increase in valuation by the state."

Subsequent amendments altered the statute in a way not material to the issues presented here.

With certain exceptions not relevant here, general ad valorem taxes on real and tangible personal property may not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized. Const 1963, art 9, § 6. The county tax allocation board allocates the available millage to the various local government units. MCL 211.211; MSA 7.71.

In 1976, the Clinton County Tax Allocation Board distributed the 15 mills available in DeWitt Township as follows:

| Township | 1 mill |
| County | 5.8 mills |
| Local School Districts | 8.2 mills |

The State Tax Commission found that property in Clinton County was under-assessed and assigned the county an equalization factor of 1.02620. Accordingly, the millage allocated to the county was reduced to 5.664 mills and the millage allocated to the township was reduced to 0.976 mill. The reduction apparently rendered the township ineligible for state revenue-sharing funds under MCL 141.912; MSA 5.3194(412), which provides, in relevant part:

"The department of management and budget shall cause to be paid on a per capita basis during each June, $9,500,000.00 of the intangibles tax collections from the preceding period of July 1 to May 31 to each city, village, or township levying at least 1 mill local property tax in the preceding calendar year."

The township petitioned for review of the reduction order by the Michigan Tax Tribunal, naming Clinton County as respondent and alleging it had been denied its constitutional rights of due process and equal protection. The county filed an answer

admitting that it ordered the reduction and agreeing with petitioner that 1975 PA 243 was unconstitutional. The tribunal *sua sponte* dismissed the action for want of a controversy. Petitioner appealed and this Court ordered the action reinstated with the Michigan Department of Treasury impleaded as a respondent. The tribunal complied with this Court's order but again dismissed the action *sua sponte,* this time on the ground that it had no jurisdiction to decide constitutional questions. Petitioner appeals by right.

We believe that the Tax Tribunal has jurisdiction to decide constitutional questions for the reasons stated in *Eyde v Lansing Twp,* 105 Mich App 370, 375-376; 306 NW2d 797 (1981). The rationale utilized by the tribunal for dismissal of the instant case, therefore, was erroneous. However, this Court will affirm a decision which reaches the right result for the wrong reason. *Gilbert v Grand Trunk Western R Co,* 95 Mich App 308, 313; 290 NW2d 426 (1980). Moreover, this Court has the power to give any judgment and make any order which ought to have been given or made in the tribunal below. GCR 1963, 820.1(7). We note that the instant case presents no questions of fact. In the interests of justice and, hopefully, to prevent future litigation, we elect to resolve the constitutional questions which the tribunal declined to address. Compare *Dation v Ford Motor Co,* 314 Mich 152, 160-161; 22 NW2d 252 (1946).

Petitioner and respondent Clinton County argue that the reduction provision violates the requirement of uniformity of taxation found in Const 1963, art 9, § 3. In *Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 304 Mich 328, 335-336; 8 NW2d 84 (1943), the Court explained the constitutional requirement:

"A constitutional provision requiring a uniform rule of taxation was considered in the case of *Exchange Bank of Columbus v Hines,* 3 Ohio St 1. The court said. p 15:

"'What is meant by the words "taxing by a uniform rule?" And to what is the rule applied by the Constitution? No language in the Constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. "Taxing" is required to be "by a uniform rule;" that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. *The uniformity must be coextensive with the territory to which it applies. If a State tax, it must be uniform over all the State; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable.*' " (Emphasis added.)

The emphasized language shows the difficulty with petitioner's and respondent Clinton County's position. The school district is a different taxing unit than the township. Uniformity has never been held to require that different taxing units tax at the same millage rate. In this connection it is informative to examine the United States Supreme Court's construction of the uniformity clause of the Michigan Constitution of 1850 in *Pine Grove Twp v Talcott,* 86 US (19 Wall) 666, 675; 22 L Ed 227 (1873). The Court interpreted the Michigan Constitution on the principle, since abandoned in *Erie R Co v Tompkins,* 304 US 64; 58 S Ct 817; 82 L Ed 1188 (1938), that federal courts would make independent determinations of questions of general jurisprudence. The Court said:

"The 11th clause of the same article declares that the Legislature shall provide a uniform rule of taxation, except as to property paying specific taxes, and that taxes shall be levied upon such property as shall be prescribed by law. The object of this provision was to prevent unjust discriminations. It prevents property from being classified and taxed as classed, by different rules. All kinds of property must be taxed uniformly, or be entirely exempt. The uniformity must be co-extensive with the territory to which the tax applies. If a state tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout such county or city. *Gilman v Sheboygan,* 2 Black 514; 17 L Ed 307. But the rule does not require that taxes for the same purposes shall be imposed in different territorial subdivisions at the same time. If so, a county could not levy a tax to build a court-house, jail, or infirmary without rendering it necessary for every other county in the State to do the same thing without reference to the different circumstances of each one. So here one township through which the railroad was to pass, expecting to be largely benefited by its construction, might give its bonds and impose the tax requisite to meet the principal and interest, while another township similarly situated might refuse to do so. The rule would have no application to the latter."

Petitioner and respondent Clinton County contend that, while on its face the statute merely alters certain millage rates while leaving others the same, the effect of the statute is no different than if it required some taxing units to tax based on state equalized values while permitting other units to tax based on lesser county equalized values. Property taxes are the product of several factors, including the equalization factor and the millage rate. As a matter of simple arithmetic, any variation in the millage rate necessarily has the same effect as a variation in the equalization factor. Thus the argument advanced by petitioner and respondent Clinton County could be used to

defeat any variation in millage rates between taxing units. Since variations in millage rates between taxing units are clearly not inconsistent with uniformity within a taxing unit, we decline to adopt such an argument.

Petitioner and respondent Clinton County argue that the statute violates Const 1963, art 9, § 6 by reducing the total amount of ad valorem taxes imposed below 15 mills of each dollar of assessed valuation of property as finally equalized. The constitutional section provides, in relevant part:

"Except as otherwise provided in this constitution, the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized."

The section merely places an upper limit on the taxing power. It does not require that the Legislature allow local government units to tax at the maximum rate permitted under the constitution.

Petitioner and respondent Clinton County argue that the exemption to the reduction provision for school districts, intermediate school districts, and community college districts denied them equal protection of law and that the reduction, which had the effect of rendering them ineligible for revenue-sharing pursuant to MCL 141.912; MSA 5.3194(412), denied them due process. However, except as to certain express constitutional grants and limitations of power, local government units are only creatures of legislation. *Bay City v State Board of Tax Administration,* 292 Mich 241, 257; 290 NW 395 (1940), *Kalamazoo v Titus,* 208 Mich 252; 175 NW 480 (1919). In *Williams v Mayor &*

*City Council of Baltimore,* 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933), the Court said:

"There is error in the holding of the Circuit Court of Appeals that the statute of Maryland creating this exemption is a denial to the respondents of the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States.

"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."

See also *New York v Richardson,* 473 F2d 923, 929 (CA 2, 1973), *cert den sub nom Lavine v Lindsay,* 412 US 950; 93 S Ct 3012; 37 L Ed 2d 1002 (1973). We see no reason why a local governmental unit's assertion of equal protection and due process rights under our state constitution should lead to a different result. Petitioner refers us to *DeWitt Twp v State Tax Comm,* 397 Mich 576, 579-580; 244 NW2d 920 (1976), in which petitioner claims that the Court held that the township was deprived of equal protection and due process of law under both the state and federal constitutions by being denied an opportunity to appeal the imposition of a factor assigned by the state tax commission. Petitioner's reliance on that case is mistaken. Actually, only three justices joined in the statement in the lead opinion that DeWitt Township had been deprived of due process and equal protection of the law. That statement was dictum, since a majority of the Court relied upon the intent of the Legislature. It does not appear from the opinion that the Court considered whether local governmental units had due process and equal protection rights under the state constitution which they could invoke in opposition to the will of the Legislature.

Finally, the opinion is distinguishable in that it involved an action which the township was authorized to bring as a representative of its taxpayers. See MCL 211.34(4); MSA 7.52(4) and *Saginaw v Consumers Power Co,* 213 Mich 460, 482; 182 NW 146 (1921). The due process and equal protection rights referred to by the plurality in *DeWitt Twp Supervisor v State Tax Comm, supra,* were rights of the taxpayers in the township, not rights of the township itself.

Affirmed.