*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RODERICK D. BLACK,

        Plaintiff-Appellant,

v

LISA COOK, RACHEL ICKES, and JOSHUA ICKES,

        Defendants-Appellees.

FOR PUBLICATION
March 23, 2023
9:05 a.m.

No. 360492
Berrien Circuit Court
LC No. 2021-003244-DP

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

This case involves a plaintiff who seeks to establish that he is the father of a minor child born out of wedlock, where the child's mother is now deceased. Plaintiff asserts he was in a relationship in 2014 with Lisa Cook. Ms. Cook died in 2020. Prior to her death, Ms. Cook gave birth to a child. In the trial court, plaintiff sought to prove he was the biological father of Ms. Cook's child by filing an action under the Paternity Act, MCL 722.711 *et seq*. In the suit, plaintiff named the decedent Ms. Cook and the guardians of the minor child as defendants. The trial court concluded that because Ms. Cook was deceased, she was not a proper party defendant, that the guardians could not be defendants in a paternity action, and that the circuit court was not the correct forum to bring this action. For the reasons stated in this opinion, we reverse the trial court's dismissal of this action. We remand the case to the trial court to allow plaintiff to amend his complaint and to name the minor child as a party defendant as specifically authorized in the Paternity Act, MCL 722.711 *et seq*., and for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff filed suit under the Paternity Act to establish his paternity of a minor child he believed he fathered from a sexual relationship he had with Cook during May and June of 2013. He alleged that Cook bore the child out of wedlock in Florida in 2014, that he visited the child during that year for a period of time until he moved to New York. Plaintiff alleged that he periodically sent Cook money but his contact ended in 2016 when Cook stopped responding and lived a nomadic life that prevented his having contact with her and the child. Plaintiff alleged that

the child resided in Berrien County with defendants, Rachel and Joshua Ickes, who served as the child's legal guardians.[1] He also alleged that Cook died in 2020.

Plaintiff alleged further that he learned after investigating that a petition for appointment of a guardian had been filed in early 2017, and that a court ordered the appointment of guardians on May 30, 2017, but in Rachel's later annual report, she requested that Joshua be removed because the Ickes were divorcing.

Plaintiff requested entry of an order requiring DNA testing to determine if he was the child's biological father, and if so, that an order of filiation be entered and the child's birth certificate be amended to identify plaintiff as the child's father. Plaintiff also requested that he be granted sole legal and physical custody of the child following scheduled visits to enable him and the child to reestablish their relationship. With his complaint, plaintiff filed a motion for DNA testing pursuant to MCL 722.714. In his motion he alleged the same basic facts stated in his complaint and requested that Rachel be ordered to make the child available for genetic testing, and if the testing determined plaintiff was the child's father, that plaintiff be granted sole legal and physical custody of the child following an orderly and court-scheduled reunification between plaintiff and the child.

Rachel answered plaintiff's complaint and stated that the minor child resided with her, she divorced Joshua, and that she lacked knowledge or information whether plaintiff is the child's biological father. She asserted that defendants could not be sued under the Paternity Act. With her answer, Rachel filed a motion to dismiss arguing that plaintiff sued a deceased person, when deceased persons could not be sued, and guardians, who could not be sued under the Paternity Act. In her supporting brief, Rachel argued that neither Cook nor the child's guardians could be sued under the Paternity Act and that plaintiff had to file his action against a proper party, not the deceased mother or the child's guardians. Plaintiff opposed the motion.

At the hearing on her motion, Rachel argued consistent with her briefing. She asserted that plaintiff filed in the wrong forum and under the wrong statute and should have brought the action under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. Plaintiff argued in opposition and the trial court took the matter under advisement. The trial court at a subsequent hearing issued its opinion from the bench. It agreed with Rachel that plaintiff filed in the wrong forum and under the wrong statute and dismissed the action in its entirety.

## II. STANDARDS OF REVIEW

We review de novo a circuit court's summary disposition decision. *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). "A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted." *Id*. (quotation marks and brackets omitted). "A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Id*. (citation omitted). All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party. *Id*. at 304-305. "Summary disposition on the basis of subrule

---

[1] In this opinion we will refer to the Ickes by their respective first names for purposes of clarity.

(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*. at 305 (quotation marks and citation omitted). "Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). "Whether the trial court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 49-50; 620 NW2d 546 (2000). We also review de novo the proper interpretation and application of court rules. *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005). "The decision whether to drop or add a party to an action rests within the discretion of the trial court." *Ombrello v Montgomery Ward Long Term Disability Trust*, 163 Mich App 816, 824; 415 NW2d 658 (1987). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation marks and citation omitted).

## III. ANALYSIS

### A. RACHEL'S MOTION SEEKING RELIEF UNDER MCR 2.116(C)

Plaintiff first argues that the trial court erred by granting summary disposition to defendants because Rachel's motion for summary disposition failed to specify the subrule of MCR 2.116(C) in violation of MCR 2.116(C). We disagree.

Although it is true that Rachel's motion did not specify by number the subrule of MCR 2.116(C) on which she based her motion, the motion and accompanying brief indicated that Rachel essentially sought dismissal under MCR 2.116(C)(8) for failure to state a claim against defendants by suing Cook, a deceased person, and by suing the minor child's guardians. A grant of summary disposition is appropriate under MCR 2.116(C)(8) "when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 131-132; 839 NW2d 223 (2013) (citation omitted). The trial court reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts. *Id*. However, "the mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994).

Rachel based her summary disposition motion on the ground that plaintiff sued a deceased person and the minor child's guardians, neither of which, she argued, were proper party defendants against whom a Paternity Act claim could be stated. The motion, therefore, sought summary disposition within the purview of MCR 2.116(C)(8) for failure to state a claim upon which relief can be granted. The motion and brief complied with MCR 2.116(C)'s requirement that it "must specify the grounds on which it is based." Contrary to plaintiff's argument, MCR 2.116(C) does not require that a motion for summary disposition specifically state the number of the subrule of MCR 2.116(C), but only that it must specify which of the grounds provided under MCR 2.116(C) warranted summary disposition. This Court has explained that "exact technical compliance . . . is not required." *Mollett v City of Taylor*, 197 Mich App 328, 332; 494 NW2d 832 (1992). Rachel's motion for summary disposition, therefore, was not legally flawed simply because it failed to expressly state by subsection number that she moved for summary disposition under MCR

2.116(C)(8). Plaintiff's request that this Court reverse the trial court's order granting Rachel's motion for summary disposition because she failed to identify the specific ground on which she requested summary disposition seeks to elevate form over substance, and this Court has been reluctant to reverse on this basis. *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989).

Despite Rachel's failure to specify the subrule under which she sought summary disposition, because the substance of her motion and accompanying brief indicated that the motion sought dismissal for failure to state a claim against defendants upon which relief could be granted, the trial court could consider, address, and decide the motion as if specifically brought under MCR 2.116(C)(8).

B. SUMMARY DISPOSITION BASED ON WRONG FORUM

Plaintiff next argues that the trial court erred by basing its summary disposition decision on its conclusion that plaintiff filed the action in the wrong forum. We agree.

When interpreting a statute, the primary goal is to discern and give effect to the intent of the Legislature. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). This Court considers statutory provisions within the context of the whole statute and must "give effect to every word, phrase, and clause . . . [to] avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). When statutory terms are undefined, this Court interprets the terms according to their plain and ordinary meaning, considering the context in which the words are used, and may consult dictionary definitions if necessary to accomplish this task. *Koontz*, 466 Mich at 312; *Yudashkin v Linzmeyer*, 247 Mich App 642, 649-650; 637 NW2d 257 (2001).

The record reflects that the trial court announced during its ruling that it adopted Rachel's argument. It concluded that the case could and should be filed in a different forum because "this is an issue that would be more properly handled in a different forum" as the Paternity Act did not anticipate or allow an action against guardians, and "this can be filed in a different forum under a different statute but the order of filiation cannot be granted under the Paternity Act as it was not in the letter of the law" and "I just do not find that this is the right forum." The term "forum" is defined in *Black's Law Dictionary* (10th ed) as:

> A court of justice, or judicial tribunal; a place of jurisdiction; a place of litigation; an administrative body. Particular place where judicial or administrative remedy is sought.

Inherent in this definition is that a court of justice or judicial tribunal has jurisdiction or authority to determine the matter before it and it is able to provide a judicial remedy. Grounds for dismissal because of the forum typically involve determination whether the forum is convenient or has been properly selected by the plaintiff. "Although a plaintiff's choice of forum is generally granted deference, trial courts are charged to consider the plaintiff's choice of forum and to weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state." *Ramamoorthi v Ramamoorthi*, 323 Mich App 324, 340; 918 NW2d 191 (2018) (quotation marks and citations omitted). "Forum non conveniens is defined as the discretionary

power of a court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum. It is a common-law doctrine that allows a court to decline to hear a case even though the court otherwise has jurisdiction." *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 223; 813 NW2d 752 (2011) (quotation marks, alteration, and citations omitted).

Analysis of the record in this case indicates that the trial court did not consider or determine whether the case had been filed in an inconvenient forum or whether another court actually had concurrent jurisdiction. Rather, the trial court used the term "forum" for its decision to dismiss this case, because it concluded that by the nature of the case it must be pursued in the probate court. The court stated that it agreed with Rachel's argument that plaintiff should have filed in a different court and that the case should have been brought under a different statute. Her argument, however, lacked merit because her suggestion that plaintiff should file in a different court under a different statute does not comport with the law applicable to a case seeking determination of paternity, DNA testing, and entry of an order of filiation depending on the outcome of the testing.

The trial court, in this respect, should have focused on whether it had subject-matter jurisdiction over the matter. The circuit court's jurisdiction derives from the general jurisdiction imparted to circuit courts by the Michigan Constitution. *Okrie v State*, 306 Mich App 445, 467; 857 NW2d 254 (2014). The Constitution provides as follows:

> The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court. [Const 1963, art 6, § 13.]

The Michigan Legislature enacted MCL 600.605 regarding the jurisdiction of the circuit courts which similarly states:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

Subject-matter jurisdiction "is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004) (quotation marks and citation omitted); see also *In re Warshefski*, 331 Mich App 83, 88; 951 NW2d 90 (2020).

The Legislature created the Paternity Act as a procedural vehicle for determining the paternity of children born out of wedlock. *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009).[2] MCL 722.714 provides in relevant part:

> (1) An action under this act shall be brought in the circuit court by the mother, the father, . . . or the department of human services as provided in this act. The Michigan court rules for civil actions apply to all proceedings under this act. A complaint shall be filed in the county where the mother or child resides.

> \* \* \*

> (3) An action under this act may be commenced during the pregnancy of the child's mother or at any time before the child reaches 18 years of age. . . .

> \* \* \*

> (7) The party filing the complaint shall name the person believed to be the father of the child and state in the complaint the time and place, as near as possible, when and where the mother became pregnant. . . .

> \* \* \*

> (11) It is unnecessary in any proceedings under this act commenced by or against a minor to have a next friend or guardian ad litem appointed for the minor unless required by the circuit judge. A minor may prosecute or defend any proceedings in the same manner and with the same effect as if he or she were of legal age.

> (12) If a child born out of wedlock is being supported in whole or in part by public assistance, including medical assistance, the department of human services may file a complaint on behalf of the child in the circuit court in the county in which the child resides. The mother or alleged father of the child shall be made a party plaintiff and notified of the hearing on the complaint by summons. . . .

> \* \* \*

> (14) If a determination of paternity is made under this act, the court may enter an order of filiation as provided in section 7. Regardless of who commences an action under this act, an order of filiation entered under this act has the same effect, is subject to the same provisions, and is enforced in the same manner as an order of filiation entered on complaint of the mother or father.

MCL 722.714a(1) provides:

---

[2] MCR 3.217 and the rules applicable to civil actions govern actions under the Paternity Act, MCL 722.711 *et seq.*

The summons or other initial notice to a party in an action under this act shall contain notification that the party's obligation to support the child will be determined and that the party's rights to custody of and parenting time with the child may be determined during the paternity action.

Under MCL 722.717b, after the circuit court determines paternity, it must address and decide the issues of child custody and parenting time. MCL 722.720 grants the circuit court continuing jurisdiction over proceeding brought under the Paternity Act, including child custody, support, and parenting time. MCL 722.726 provides:

This act applies to all cases arising out of birth out of wedlock commenced after this act takes effect, and such cases shall not thereafter be commenced under chapter 42 of the Revised Statutes of 1846, as amended, being sections 722.601 to 722.612, inclusive, of the Compiled Laws of 1948, which shall, however, apply to and govern all cases commenced thereunder prior to the time this act takes effect.

In *Girard v Wagenmaker*, 437 Mich 231, 251; 470 NW2d 372 (1991) (citation omitted), our Supreme Court noted "that a proper action to determine paternity should be brought under and governed by the provisions of the Paternity Act." In *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 311; 805 NW2d 226 (2011) (quotation marks and citation omitted), this Court explained:

Standing to pursue relief under the Paternity Act is conferred on (1) the mother of a child born out of wedlock, (2) the father of a child born out of wedlock, or (3) the [Department of Health and Human Services] on behalf of a child born out of wedlock who is being supported in whole or in part by public assistance.

Under the Paternity Act, the Legislature vested the circuit court with the power to determine the paternity of a child born out of wedlock. MCL 722.714(1). Accordingly, the circuit court had subject-matter jurisdiction over this paternity action and the circuit court was the proper forum in which to file an action under the Paternity Act. Plaintiff, therefore, did not choose the wrong forum in which to file his case, nor is there anything that indicates that the doctrine of forum non conveniens applied to permit the trial court to decline the exercise of its jurisdiction. Further, under MCL 722.714(1), plaintiff had standing to bring this action. *Pecoraro*, 291 Mich App at 311. Thus, to the extent that the trial court based its dismissal ruling on the ground that plaintiff filed the action in the wrong forum, it erred.

## C PROPER PARTIES IN A PATERNITY ACTION WHERE THE MOTHER IS DECEASED AND THERE HAS BEEN NO ESTATE OPENED

The trial court's ruling also considered whether plaintiff sued the proper defendants. Analysis of the Paternity Act reveals that, under MCL 722.714(1), a putative father may file an action in the circuit court. The act, however, does not define who may be sued. Various provisions under MCL 722.714 indicate that the mother or the putative father may be defendants. MCL 722.714(11) also provides that an action may be commenced by or against a minor and that such "minor may prosecute or defend any proceedings in the same manner and with the same effect as if he or she were of legal age" without the appointment of a next friend or guardian ad litem. This provision may be interpreted as meaning that a minor mother or minor putative father may bring

an action or be named as a defendant and may proceed without representation. The provision can also be reasonably understood to mean that a minor child born out of wedlock may commence or defend a paternity action and no provision under the Paternity Act states otherwise.

MCR 2.201(E)(1) permits a minor to be a party in an action with representation (a) by a conservator if one previously has been appointed, or (b) the court must appoint a competent and responsible person to appear as the minor's next friend on his or her behalf, or (c) appoint a guardian ad litem if the minor is a defendant.[3] See generally *Olin by Curtis v Mercy Health Hackley Campus*, 328 Mich App 337, 344-352; 937 NW2d 705 (2019). There does not appear to be any law precluding a plaintiff in a Paternity Act case from bringing an action against a minor child to determine the paternity of a putative father to such child.

Regardless, no provision of the Paternity Act states or implies that a deceased mother may be sued in an action brought under the Paternity Act. MCR 2.201(C), which pertains to the capacity to sue or be sued, provides "(1) A natural person may sue or be sued in his or her own name." A deceased person is no longer a natural person. This Court has addressed similar instances where plaintiffs sued deceased defendants and concluded that deceased persons cannot participate in litigation or be sued as a matter of law. See *Packard v Brown*, unpublished per curiam opinion of the Court of Appeals, issued August 22, 2019 (Docket No. 344720), p 5; see also *Potter v Devine*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2013 (Docket No. 308878), p 4.[4] Plaintiff cites no authority for the proposition that it is possible to sue a deceased person in Michigan courts. Accordingly, plaintiff cannot sue Cook.[5]

The Paternity Act does not address—one way or another—whether a guardian may properly be named as a defendant in an action under the Paternity Act. The EPIC, specifically MCL 700.5215, prescribes the powers and duties of a minor's guardian as follows:

> *A minor's guardian has the powers and responsibilities of a parent who is not deprived of custody of the parent's minor and unemancipated child*, except that a guardian is not legally obligated to provide for the ward from the guardian's own money and is not liable to third persons because of the parental relationship for the ward's acts. *A guardian has all of the following powers and duties*:

---

[3] Notably, in domestic relations actions, under MCR 3.202, a minor person may sue or be sued as provided in MCR 2.201.

[4] Unpublished opinions of the Court of Appeals are not binding upon this Court, but may be considered for their persuasive value. *Paris Meadows LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010); MCR 7.215(C)(1).

[5] Plaintiff correctly argues that he is not an interested person under the EPIC and has no standing to bring an action under the EPIC or open an estate for Cook. Nor can plaintiff open an estate on behalf of the minor child to enable plaintiff to seek a paternity determination because he has not been determined to have any paternal relationship with the child and cannot act on the child's behalf. The trial court erred by ruling that plaintiff must file an action in a different court under a different statute and Rachel's arguments to the contrary fail as a matter of law.

(a) The guardian shall take reasonable care of a ward's personal effects and commence a protective proceeding if necessary to protect the ward's other property. If a guardian commences a protective proceeding because the guardian believes that it is in the ward's best interest to sell or otherwise dispose of the ward's real property or interest in real property, the court may appoint the guardian as special conservator and authorize the special conservator to proceed under section 5423(3). A guardian shall not otherwise sell the ward's real property or interest in real property.

(b) The guardian may receive money payable for the ward's support to the ward's parent, guardian, or custodian under the terms of a statutory benefit or insurance system, or a private contract, devise, trust, conservatorship, or custodianship. The guardian may receive the ward's money or property paid or delivered under section 5102. Money or property received under section 5102 must be applied to the ward's current needs for support, care, and education. The guardian shall exercise due care to conserve any excess for the ward's future needs unless a conservator is appointed for the ward's estate, in which case the excess must be paid over at least annually to the conservator. The guardian shall not use that money or property for compensation for the guardian's services except as approved by court order or as determined by an appointed conservator other than the guardian. A guardian may institute a proceeding to compel a person's performance of a duty to support the ward or to pay money for the ward's welfare.

(c) The guardian shall facilitate the ward's education and social or other activities, and shall authorize medical or other professional care, treatment, or advice. A guardian is not liable because of this consent for injury to the ward resulting from the negligence or acts of third persons unless it would be illegal for a parent to have consented.

(d) A guardian may consent to a minor ward's marriage.

(e) Subject to the conditions and restrictions of chapter X of the probate code of 1939, 1939 PA 288, MCL 710.21 to 710.70, a guardian may consent to marriage or adoption of a minor ward or to the release of a minor ward for adoption.

(f) A guardian must report the condition of the ward and of the ward's estate that is subject to the guardian's possession or control as ordered by the court on petition of a person interested in the minor's welfare or as required by court rule. The report must detail the condition of the ward, medical or mental health treatment or care to which the ward was subjected, and what reason, if any, exists for the continuation of the guardianship.

(g) Within 14 days after a change in the ward's place of residence, the guardian shall give to the court notice of the ward's new address.

(h) A guardian may execute a do-not-resuscitate order on behalf of the ward as provided in section 3a of the Michigan do-not-resuscitate procedure act, 1996 PA 193, MCL 333.1053a. [Emphasis added.]

The EPIC, in the opening language of this provision, thus appears to broadly describe the powers and duties of a guardian as coextensive with those of a custodial parent. The subsequently-specified powers and duties do not, however, expressly include that a guardian of a minor may be sued as a defendant in any action.

We conclude, however, that we need not decide the issue or determine whether the trial court correctly discerned that the Paternity Act did not authorize plaintiff to sue the minor child's guardians. For the reasons that follow, we instead conclude that, even if this action was incorrectly styled, the trial court erred by dismissing it.

### D.  DISMISSAL WAS NOT PROPER AT THE TIME IT WAS ENTERED

Plaintiff alternatively argues that, even if guardians are not proper parties, the remedy for misjoinder is not dismissal because, under MCR 2.207, the trial court could remove improper parties and should have permitted plaintiff to add parties. We agree.

Under MCR 2.207, "Misjoinder of parties is not a ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of a party or on the court's own initiative at any stage of the action and on terms that are just." Moreover, if "a court grants summary disposition pursuant to MCR 2.116(C)(8) . . . , the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997); MCR 2.116(I)(5). Motions to amend "ordinarily should be granted, and should be denied" for specific reasons, including futility. *Id*. "An amendment would be futile (1) if ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted). "If a trial court denies a motion to amend, it should specifically state on the record the reasons for its decision." *Weymers*, 454 Mich at 659.

In this case, although plaintiff correctly invoked MCR 2.207 and suggested that the trial court drop the named defendants, the trial court disagreed and did not permit plaintiff to move to add a party as a defendant. Plaintiff expressed to the trial court confusion as to who could be a defendant when the mother was deceased. Plaintiff sought the court's instruction to no avail.

Under the circumstances of this case, the trial court should have permitted plaintiff to move to amend. In that regard, we do not hold what a proposed amendment should or must be in this matter but observe that potentially a pleading in a paternity action could name a minor child as a defendant under MCL 722.714(11), and if that were done, a trial court would be authorized to

appoint a named child a guardian ad litem to represent the child as envisioned by MCR 2.201(E).[6] A party, in an appropriate case, also could potentially seek the addition of the DHHS as an interested party under MCR 2.206(A)(2)(b) if the DHHS's presence in an action would promote the convenient administration of justice. Such addition might be appropriate if a minor child received public assistance, MCL 722.714(12), or the "child is receiving services under part D of title IV of the social security act, 42 USC 651 to 669b." MCL 722.714(4). Regardless, plaintiff has a right to seek and receive a determination of paternity under the Paternity Act. MCL 722.714; *Syrkowski v Appleyard*, 420 Mich 367, 375; 362 NW2d 211 (1985) ("The act was created as a procedural vehicle for determining the paternity of children 'born out of wedlock', and enforcing the resulting support obligation. The plaintiff is requesting the court to determine the status of the child and his biological paternity. The act allows fathers to seek and receive such determinations.").

Thus, regardless of whether the guardians can properly be named as defendants to a paternity action, the trial court should not have dismissed the case in its entirety without permitting plaintiff an opportunity to identify and seek the addition of an indisputably-appropriate party defendant to permit this action to proceed. The trial court, therefore, abused its discretion by dismissing the action in its entirety when it should have permitted plaintiff to amend his complaint and add an appropriate party defendant as permitted under MCR 2.207 and MCR 2.118.

## IV. CONCLUSION

For the reasons stated in this opinion, we reverse the trial court's dismissal of the case in its entirety because it should have permitted plaintiff an opportunity to add an appropriate defendant so that plaintiff may proceed with the determination of plaintiff's paternity of the minor child.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford

---

[6] The fact that the guardian(s) in this case likely would be named the minor child's guardian ad litem under MCR 2.201(E)(1)(c) supports our conclusion, as a practical matter, that it is unnecessary to determine whether a guardian may properly be directly named as a defendant to an action brought under the Paternity Act.